**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**SHANON I. DAVIS,**

    **Plaintiff,**

v.                                      Case No. 3:14cv197/MCR/CJK

**AREA HOUSING COMMISSION,**

    **Defendant.**

_____/

## ORDER

Plaintiff Shanon Davis ("Davis") filed suit against her former employer, Defendant Area Housing Commission ("AHC"), for interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*., and disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117.  Pending before the Court is AHC's Motion for Summary Judgment (doc. 47).  Having fully reviewed the record and the parties' arguments, the Court finds that the motion is due to be granted.

**Background**[1]

Davis was employed by AHC from January 26, 2011, until her termination on June 18, 2013.  It is undisputed that when she was hired, she was given an employee handbook that explained her rights under the FMLA.[2]  On April 4, 2013, Joyce Crutchfield, Director of Human Resources for AHC, sent Davis home from work to seek medical attention regarding a skin condition that some co-workers feared was contagious.  Crutchfield

---

[1] For the limited purposes of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the Plaintiff.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).  The Court is mindful that "what [are] considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[2] According to the handbook, when the employer requests medical certification of an FMLA-qualifying condition, the certification must be provided within 15 calendar days.  The handbook also notifies employees that failure to comply means the employee's leave is not protected.  (Doc. 48-2).

Case No. 3:14cv197/MCR/CJK

provided Davis a letter on April 4, 2013, stating, "I have given you documentation for your treating physician to complete along with information on FMLA and how it works for you." (Doc. 48-4). The letter requested that Davis return the medical certification documents when they were completed by her physician. AHC produced an FMLA form entitled Notice of Eligibility, which Abe Singh, the Executive Director of AHC, stated Davis received on April 4.[3] Davis conceded in her deposition that on April 4 she received FLMA documentation in the form of an "informational sheet" or "a general information sheet or two," but she says the physician certification forms were not included.[4]

Davis remained on leave from April 4 through May 7.[5] On April 14, Davis's physician diagnosed her condition as 99% certain to be lupus. When the diagnosis was confirmed on April 21, 2013, Davis said she immediately notified her supervisor, Glenn Dewsnap, and Singh, but she concedes she did not provide medical certification of her diagnosis. Davis also was absent on May 20, 24, 28, and 31. On May 30, 2013, Singh met with Davis in person to discuss the need for medical documentation because she had been absent from work for most of April and May and had not submitted the requested medical certification. Singh says that at this meeting, Davis was given FMLA medical certification forms that needed to be completed by a physician and returned within 15 days. The time requirement was plainly stated on the form[6] and was consistent with the general

---

[3] The Notice of Eligibility states, in part, that the employee must be given 15 days to comply with a request for medical certification and that if sufficient information is not provided in a timely manner, FMLA leave may be denied.

[4] Davis did not produce the information sheet she said she received. She explained at her deposition that she looked for it but could not find it.

[5] In her deposition, Davis testified that as of April 4, she had 200 hours of combined available leave time and sick leave. This absence would have used all of that time. However, the record is unclear as to whether Davis returned to work on May 8 or May 14. (See Doc. 48-5, at 16-20).

[6] The medical certification form Singh provided Davis included the following statement as part of the "Instructions to Employee" in Section II of the form:

> The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete

Case No. 3:14cv197/MCR/CJK

FMLA information Davis had received in the handbook when she was first employed and also in the Notice of Eligibility provided to her on April 4. According to Davis, this was the first time she received the actual certification forms, and she said Singh did not inform her of a need to return the forms by a certain date. She did, however, schedule a doctor's appointment on June 4, 2013, for the purposes of completing the forms, and this was within the 15-day period following AHC's second request for medical certification.

Davis was unexpectedly hospitalized on June 3, 2013, and remained in the hospital through June 7.[7] After her release, Davis did not return to work for another week. Because her hospitalization had caused her to miss the June 4 doctor's appointment, Davis rescheduled it for June 19, 2014, which she says was her doctor's first available appointment. June 19 was 5 days outside of the 15-day period following AHC's second request for certification, and 77 days after the initial April 4 written request. There is no evidence that Davis notified AHC of her need to reschedule the appointment for a later date or that she asked for additional time to submit the required medical certification. It is undisputed that Davis was absent from work from April 4 through May 7, and on May 20, 24, 28, 31, and June 3-7, 10-14, and 17, a total of 48 days. During the 48 days she was on leave, Davis provided one doctor's note to AHC, which stated only that she was absent "for medical reasons" from April 4 through May 7. She never provided the medical certification that had been twice requested.

When Davis returned to work without the required medical certification on June 18, over two months after the initial request and four days after expiration of the 15-day limit that had been triggered by the second request on May 30, Singh terminated her employment. Davis testified that she told Singh she had a doctor's appointment the next day to obtain the requested certification but that Singh said he was tired of hearing

---

and sufficient medical certification may result in a denial of your FMLA request. 20 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b),

(Doc. 48-7).

[7] Davis testified that she was hospitalized because she thought she was having a stroke.

excuses. Davis received a formal letter of termination dated June 24, 2013, stating, "[y]our excessive absence associated to your ill health caused our company and other staff significant disparity with reassignment and postponement or delay of other work orders." Also, the letter states that Davis is being terminated "in accordance with our policy" because Singh did not hear from her regarding a specific return to work date, she did not return to work with a medical release and the required FMLA certification forms, and the FMLA form was not returned within 15 days. According to Davis, prior to her termination she was in constant contact with her supervisor, Dewsnap, about her illness and absences and was never told either that she needed to return the FMLA forms by a certain date or that her absences were excessive. She concedes, however, that she received an FMLA "informational sheet" on April 4, which AHC has produced and which outlines the 15-day requirement and consequences of failing to follow them, and also that she received the medical certification forms from Singh on May 30.

In its motion for summary judgment, AHC argues that Davis's FMLA claims fail because she never provided the requisite medical certification and that her disability discrimination claim also fails because she never provided notice of a disability.

**Discussion**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (*en banc*). Courts

may not make credibility determinations or weigh the evidence presented on summary judgment. *Frederick v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-49. Thus, to survive a motion for summary judgment, the nonmoving party must present more than "a mere 'scintilla' of evidence," and the record must include evidence sufficient for a jury to reasonably find for that party. *Brooks v. County Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir.2006) (*quoting Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990)).

**FMLA Claims**

Under the FMLA, an eligible employee may take up to 12 weeks of unpaid leave annually because of a serious health condition that leaves the employee unable to perform his or her job. *See Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014) (internal marks omitted). If an employer interferes with, restrains, or denies the exercise, or attempted exercise, of FMLA rights, the employee may bring a private civil action for damages or equitable relief. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (citing 29 U.S.C. §§ 2615(a)(1) & 2617(a)). The Eleventh Circuit has explained that § 2615(a) includes two types of FMLA claims: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* (internal marks omitted). This case includes both types of claims.

<u>Interference</u>

An FMLA interference claim requires the employee to prove by a preponderance of the evidence that she was "entitled to the benefit denied." *Id.* (internal marks omitted); *see also Jarvela v. Crete Carrier Corp.*, 776 F.3d 822, 831 (11th Cir. 2015). On an interference claim, the motives of the employer are irrelevant. *See Martin v. Brevard Cnty. Pub. Schs.*,

543 F.3d 1261, 1267 (11th Cir. 2008) (internal marks omitted).  The FMLA allows the employer to require certification from the employee's health care provider.  The certification must include the date on which the serious condition commenced, the probable duration of the condition, and appropriate medical facts regarding the condition.  *See* 29 U.S.C. § 2613(a)-(b); *see also Cooper v. Fulton Cnty., Ga.*, 458 F.3d 1282, 1285 (11th Cir. 2006) ("Employers may require that employees furnish medical certification to verify eligibility for leave.").  AHC argues it is entitled to summary judgment on Davis's FMLA interference claim because it requested medical certification of a serious health condition by health care provider, and Davis twice failed to provide it within the required time frame.  Davis responds that AHC failed to comply with its obligations under the FMLA to provide her with adequate written notice detailing her obligations and the consequences of her failure to meet them and also argues there were extenuating circumstances that prevented her from complying with the 15-day requirement.

      The FMLA regulations place obligations on both the employer and the employee. *See generally White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188 (11th Cir. 2015) (discussing FMLA notice requirements).  The employer must provide an employee with notice of FMLA eligibility within five days of learning that the employee's leave might be for a qualifying reason, and the notice should detail "the specific expectations and obligations of the employee" and should explain the consequences of any failure to comply.  *See* 29 C.F.R. § 825.300(b), (c).  In addition, the notice "may be accompanied by any required certification form."  29 C.F.R. § 825.300(c)(3).  "When the employer has enough information to determine whether the leave is being taken for an FMLA-qualifying reason (*e.g.*, after receiving a certification), the employer must notify the employee" within five days of whether the leave will be designated and counted as FMLA leave.  29 C.F.R. § 825.300(d).  The regulations provide that calling in "sick" without providing more information is not sufficient notice to trigger an employer's FMLA obligations.  29 C.F.R. § 825.303. Also, an employer may require the employee to support the use of FMLA leave by providing a certification from a health care provider, and if requested, "[t]he employee

must provide the certification within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."  29 C.F.R. § 825.305(a) & (b).  The employer must provide notice of the requirement and of the anticipated consequences of failing to provide adequate certification, and it is the employee's responsibility to provide "a complete and sufficient certification" when requested by the employer, and if the employee fails to do so, the employer may deny the taking of FMLA leave.  29 C.F.R. § 825.305(d).

The record shows that Davis twice received adequate written notice of the need to provide medical certification of a serious health condition and was given more than 15 days to comply.  Even accepting as true Davis's assertion that she was not verbally told of the 15-day requirement, the regulations do not require this and the record shows indisputably that she received the information in writing.  *See Cooper* 458 F.3d at 1285 (stating the notice must be written and citing 29 C.F.R. § 825.301(c)(2)(ii)).  The 15-day requirement and consequences of failure to comply were plainly stated in the written FMLA information she received on April 4, and it was also plainly stated in the medical certification forms she does not dispute receiving on May 30.[8]  Although Davis disputes receiving the medical certification forms on April 4, the regulations do not require the employer to provide certification forms, only written notice that certification is required.  The regulations state permissively that the employer "may" provide the certification documents.  29 C.F.R. § 825.300(c)(3).  Also, Davis's oral report of her diagnosis to her supervisor and Singh is insufficient to comply with the requirement to provide certification after the employer has expressly requested medical certification.  *See* 29 C.F.R. § 825.305(c) (stating that "[t]he employee must provide a complete and sufficient certification to the employer if required by the employer").  The record reflects that Davis did not provide the requested medical certification within the time prescribed or even after being provided the forms and

---

[8] As noted previously, *see supra* Note 6, the medical certification forms provided to Davis listed the 15-day period and the anticipated consequences of failing to adequately comply in a section entitled "Instructions to Employee."

requested to provide it a second time.

The Court rejects Davis's contention that there is a question of fact about whether it was practicable for her to timely provide the medical certification. First, AHC requested medical certification on April 4, when Davis first went out on leave, and she made no attempt to comply. Second, even after the second request for certification on May 30, Davis still did not comply within the 15 days or request an extension of time. Although Davis was hospitalized for a short time during the first seven days after the May 30 request, which caused her to reschedule a doctor's appointment she had made to obtain the certification documents, there is no evidence to suggest that Davis was too sick to obtain the certification or to request additional time during the week after her hospitalization. She did not notify AHC any point before the 15-day period expired that she had encountered difficulty obtaining the documentation in a timely manner, that she needed additional time to do so, or that she had an appointment scheduled. *Cf. White*, 789 F.3d at 1198-99 (finding a question of fact regarding whether the employer had granted plaintiff an extension of time to provide the physician's certification where the plaintiff had called her employer *one day before the 15-day deadline expired*, said she needed additional time, and was told to return it as soon as possible).

The Court is not in a position to second guess the wisdom of AHC's employment decision and decides only that the record does not show any question of fact in dispute from which a reasonable jury could find that AHC violated the FMLA. Because Davis failed to timely comply with AHC's request for medical certification, she was not entitled to FMLA leave, and thus, AHC cannot be found to have interfered with an FMLA benefit.

FMLA Retaliation

The Eleventh Circuit has stated that "[t]o prove FMLA retaliation, an employee must show that [her] employer intentionally discriminated against [her] for exercising an FMLA right." *Martin*, 543 F.3d at 1267. In the absence of direct evidence of the employer's retaliatory intent, the Eleventh Circuit employs the *McDonnell Douglas*[9] burden-shifting

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Case No. 3:14cv197/MCR/CJK

analysis to determine whether there is sufficient circumstantial proof of discrimination based on FMLA retaliation. *See Smith v. BellSouth Telecoms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001). A *prima facie* case of FMLA retaliation requires a showing that the plaintiff (1) engaged in protected FMLA activity, (2) suffered an adverse employment action, and (3) the adverse employment action was causally related to the protected FMLA activity. *Martin*, 543 F.3d at 1268. If a *prima facie* case is shown, the burden shifts, requiring the defendant to articulate a legitimate non-FMLA reason for the decision; and thereafter, the plaintiff must show that the proffered reason is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Smith*, 273 F.3d at 1314; *Martin*, 543 F.3d at 1268. At this stage of the analysis, to survive summary judgment, the plaintiff must show specific facts demonstrating pretext; "[m]ere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

Viewing the record in the light most favorable to Davis, even assuming she has set forth a *prima facie* case of retaliation, the Court concludes she has not presented any evidence (or even argument) suggesting that AHC's legitimate reason – the lack of medical certification – was a pretext for a retaliatory intent. Summary judgment in favor of AHC will be granted on this claim.

**ADA Claim**

The ADA prohibits an employer from discriminating in employment against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); *see also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). A *prima facie* case of discrimination under the ADA arises when the plaintiff shows that: (1) she is disabled; (2) she was qualified for her job at the relevant time such that she could perform its essential functions with or without reasonable accommodations; and (3) she was discriminated against because of her disability. *Lucas*, 257 F.3d at 1255. Also, an employer violates the ADA if it fails to provide a reasonable accommodation requested by an otherwise qualified employee with a disability, unless the accommodation would impose an undue hardship on the employer. *See id.* (citing 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R.

§ 1630.9(a)).  The employee, however, bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job.  *See id.*

The AHC argues that Davis did not provide notice of her health condition or how it impacted her ability to do her job, nor did she request any accommodation.  In response, Davis argues that AHC knew of her condition, because she had told Dewsnap and Singh and AHC sent her home because of it on April 4.  She argues that the provision of additional FMLA leave was a reasonable accommodation that she was denied.  The Court agrees with AHC that the record does not support this claim.  Construing the record in the light most favorable to Davis, she notified AHC of her diagnosis but has not shown that she was disabled within the meaning of the ADA or how this condition impacted her ability to do her job.  It is undisputed that Davis had missed 48 days of work within a three month period at the time she was terminated.  She had not provided the medical certification requested, and there is no indication that she had requested any particular accommodation based on her alleged disability.  Therefore, AHC is entitled to summary judgment on this claim.

Accordingly:

1. Defendant's Motion for Summary Judgment (doc. 47) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Defendant and against the Plaintiff, who shall take nothing, and close the file.
3. Costs to be taxed against the Plaintiff.

**DONE and ORDERED** this 30th day of September, 2015.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**